

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS

## AUSTIN

GERALD C. MANN
ATTORNEY GENERAL

*Lee M—1*

Honorable Fred Erisman
Criminal District Attorney
Longview, Texas

Dear Sir:

Opinion No. 0-1520
Re: Is the low-gravity crude oil
derived from the so-called "basic
sediment and water" of oil storage
tanks, to be computed in determin-
ing the liability for the gross
production or occupation tax
levied by Article 7057a, VACS,
upon the business of producing
crude oil, and if so, should the
tax be paid by the original pro-
ducer or by the purchasing re-
clamation plant?

Under date of August 25, 1939, you submit for the opinion
of this Office the following inquiry, which we quote from your
letter with the supporting facts:

"Crude petroleum oil when produced in the East Texas
area and particularly in this County, is stored in steel
storage tanks. From time to time these tanks are cleaned
and there is taken from the tank what is commonly known as
"B. S. & W", which is basic sediment and water that was
obtained from the crude petroleum placed in the tank.

"This B. S. & W. is frequently purchased by reclama-
tion plants in this County, treated chemically and after
due time, reaches the market as crude petroleum oil of a
very low gravity.

"I desire to know where the proper production tax
should be assessed on oil so obtained and treated.

"I want to know whether or not the reclamation plant
that obtained the B. S. & W. that is usually given to the
County for use on roads or burned by the producer, is
liable for a production tax after the B. S. & W. has been
so treated."

NO COMMUNICATION IS TO BE CONSTRUED AS A DEPARTMENTAL OPINION UNLESS APPROVED BY THE ATTORNEY GENERAL OR FIRST ASSISTANT

Hon. Fred Brisman, Page 2

If this basic sediment and water, sometimes referred to as "B. S. & W." is the accumulation of water and waste matter in the bottoms of tanks comprising tank farms or other storage facilities for crude oil upon which the occupation tax levied by Article 7057a, Vernon's Annotated Civil Statutes, has been paid to the State of Texas by the "first purchaser" of such oil, as contemplated by Section 1 (15) of the Act, then of course, no further tax would accrue upon the low gravity crude oil separated from this "B. S. & W." As this "B. S. & W." was part and parcel of each barrel of crude oil pumped into the tank, upon which a tax was computed and paid at the rate of two and three-quarters cents (2 3/4¢) per barrel, it would patently constitute double taxation in an unlawful sense to again collect this tax upon oil derived from such "B. S. & W."

Your letter is not clear in this regard, but for purposes of this opinion, we shall assume that the substance or product which you call "basic sediment and water," is in truth and in fact tank bottoms, taken from the tanks of the producer in tank-cleaning processes by reclamation plants purchasing same. This presents an entirely different question because, while actual basic sediment and water as such is, of course, not taxable because it contains no crude oil, tank bottoms containing a variable intermixture of basic sediment and water with crude oil would be taxable to the extent of the crude oil recovered therefrom. Upon such a limitation of the term "basic sediment and water" or "B. S. & W.," used in your letter, we will proceed to give our reasons for holding the crude oil derived from such product to be taxable.

Section 2 (1) of Article 7057a, Vernon's Annotated Civil Statutes, levies the occupation tax in question as follows:

"There is hereby levied an occupation on oil produced within this State of two and three-quarters (2 3/4¢) cents per barrel of forty-two (42) standard gallons. Said tax shall be computed upon the total barrels of oil produced or salvaged from the earth or waters of this State without any deduction, and shall be based upon tank tables showing one hundred per cent (100%) of production and exact measurements of contents."

Section 1 (5) defines "oil" to mean "crude oil or other oil taken from the earth, regardless of gravity of the oil."

Section 1 (8) of the Act provides, in part, that "allowance for any reasonable and bona fide deduction for basic sediment and water . . . will be allowed."

The oil obtained from tank bottoms, (referred to in your letter as basic sediment and water) although admittedly of low gravity,

Hon. Fred Erisman, Page 3

is definitely "oil" as above defined. But we anticipate that the argument will be advanced that such "oil" was created by a new process of reclamation and cannot be considered to have been "produced or salvaged from the earth or waters of the State," so as to be within the tax levy of Section 2 (1) of the Act. This same argument could plausibly be urged as to crude oil produced in certain sections of Texas containing ninety per cent water, because such "oil" is clearly not merchantable and requires a process of separation of the water and other foreign substance from the "oil" as it comes from the earth or waters of the State. But certainly the marketable crude oil which is the end-product of this process of separation is taxable under Article 7057a, Vernon's Annotated Civil Statutes, to the producer thereof, or subsequent purchasers. By the same token, crude oil, regardless of its gravity, which is produced or derived by a process of separating it from the basic sediment and water with which it has become intermixed is certainly the same crude oil, molecule for molecule, as was originally produced and salvaged from the earth and waters of the state by the producer. The fact that the process of separating the oil from foreign substances is through the medium of chemistry is beside the mark. The point we make is that no new product is created in these reclamation plants. Crude oil is not produced or created where it did not exist before. The processes of separation employed in these reclamation plants may be considered as just another step in the production of oil, which the original producer could perform if he so desired. The expedient of a sale of this oil from producer to reclamation plant does not allow an escape from taxation as oil produced in this State.

The above quoted statutory allowance of a deduction for basic sediment and water presents no obstacle to the conclusion reached herein. The allowance is limited to a "reasonable and bona fide deduction," and we understand it to be the practice and custom of the petroleum industry for this deduction to be claimed and allowed when the crude oil is pumped from the lease tanks into the pipelines on a first sale. The actual basic sediment and water in the crude oil is then and there determined by scientific methods and an adjustment is accordingly made in the purchase price between the producer and the first purchaser. But the statutory exemption or deduction was not intended to cover tank bottoms, containing in most cases a larger per cent of crude petroleum than basic sediment and water, even though such tank bottoms cannot be considered merchantable oil. The statute above quoted limits the deduction or exemption claimed to actual "B. S. & W." and impliedly disallows a fraudulent claim for deduction of a product alleged to be "B. S. & W.," but which in fact contains large quantities of crude oil. If this so-called "B. S. & W.," unmarketable as crude oil, is used on highways or destroyed, no tax accrues. But if it contains such quantities of crude oil as to become interesting to a reclamation plant, it is not, in point of fact, "B. S. & W.," and the oil derived therefrom is taxable.

Hon. Fred Erisman, Page 4

It remains to be determined upon whom the obligation to pay this occupation tax rests. By Section 1 (12) of Article 7057a Vernon's Annotated Civil Statutes, this occupation tax is made a primary liability of the "producer" of crude petroleum as defined in Section 1 (1) of the Act, but it is provided that every purchaser, whether "first purchaser" or "subsequent purchaser," as defined in the Act, is required to collect such tax by deducting and withholding the amount thereof from any payment made by such purchaser to the producer, and remitting same to the State. Section 1 (14) of the Act provides that the taxes levied thereby shall be a liability upon the producer, first purchaser, and/or subsequent purchaser or purchasers, and subdivision (15) of said section provides that failure of the purchaser to pay said tax shall not relieve the producer from the payment of same, nor shall it relieve any subsequent purchaser from the payment of same. Section 1 (2) of the Act defines "first purchaser" to mean any person purchasing crude oil from the producer. Section 1 (3) defines "subsequent purchaser" as any person operating any reclamation plant, topping plant, treating plant, refinery, and/or any kind or character of processing plant, or anyone who purchases oil for any purpose whatsoever, when said oil is purchased from any person other than the producer.

We are unable to determine from the facts submitted whether the reclamation plant purchasing this "B. S. & W." is a "first purchaser" or "subsequent purchaser" as hereinabove defined. But in either case an obligation would rest upon such reclamation plant to pay the occupation tax levied by Article 7057a, Vernon's Annotated Civil Statutes, upon all crude oil derived by it from the "B. S. & W." purchased, if such tax has not theretofore been paid by the producer. This is so because this tax liability rests upon either the "first purchaser" and/or "subsequent purchaser" in the event the tax is not paid by the producer, and the reclamation plant involved in your question must necessarily be either one or the other of such purchasers.

Trusting that this fully answers your inquiry, we are

Yours very truly

ATTORNEY GENERAL OF TEXAS

By _Pat M. Neff, Jr._
Pat M. Neff, Jr.
Assistant

PMN:N

APPROVED OCT 14 1939

ATTORNEY GENERAL OF TEXAS

APPROVED
OPINION
COMMITTEE
BY ___
CHAIRMAN